IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARZENA SASSAK and GREGORY )
GORMAN, )
  )
  )
Plaintiffs, )
  )
vs. ) No. 05 C 3029
  )
CITY OF PARK RIDGE, a municipal )
corporation, VILLAGE OF LAKE )
ZURICH, a municipal corporation, )
LAKE ZURICH POLICE AND FIRE )
COMMISSION, LAKE ZURICH )
POLICE DEPARTMENT, CHIEF )
WILLIAM URRY and Officer )
MATTHEW McGANNON, individually )
and in their official capacities, )
  )
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Marzena Sassak and Gregory Gorman brought this action against defendants Village of Lake Zurich, Lake Zurich Police and Fire Commission, the Lake Zurich Police Department, Lake Zurich Police Chief William Urry (collectively, the Lake Zurich defendants), the City of Park Ridge, and Officer Matthew McGannon, alleging a number of state and federal claims, including excessive force, false arrest, wrongful detention, aggravated battery, malicious prosecution, misrepresentation, conspiracy and willful and wanton misconduct. Defendants have filed two separate motions to dismiss under FED. R. CIV. P. 12(b)(6). The Lake Zurich defendants and Urry move to dismiss all counts against them. Park Ridge and McGannon move to dismiss four of the counts brought against them. For the following reasons the motions to dismiss are granted in part and denied in part.

## BACKGROUND

The following facts are taken from plaintiffs' complaint and the pleadings. On the

evening of December 26, 2004, plaintiffs, husband and wife, were returning to Chicago after visiting friends in the suburbs. Their six-year-old daughter was also in the car at the time. At approximately 9:45 pm, McGannon, a Park Ridge police officer, pulled plaintiffs' car over and ordered Sassak, the driver, to exit. Sassak complied and Gorman also stepped out of the car, informed McGannon that he was Sassak's husband and attorney, and asked if he could provide legal advice to his wife. McGannon refused and told Gorman to "get your ass" back in the car, and threatened to handcuff him. McGannon then called for additional officer support, reporting that Gorman posed a problem.

After Sassak passed a field sobriety test, Gorman again exited the car and asked McGannon if he could advise his wife. This time, McGannon not only rejected Gorman's request, but he also arrested him for resisting arrest, forcefully handcuffed him and threatened physical harm in the process. Both plaintiffs were taken to the Park Ridge police department in separate squad cars. A video camera in McGannon's squad car captured the events, and audio conversations were recorded by a microphone worn by McGannon.[1] Their daughter sat in their car during the entire ordeal.

Plaintiffs allege that they were not told of their daughter's whereabouts, even after they arrived at the Park Ridge police station. In addition to being fingerprinted and booked, Sassak was given a breathalyzer test by McGannon. She passed that test, but McGannon still administered a second breathalyzer test. She passed that test, registering well within the legal blood-alcohol content range. Plaintiffs allege that the results of the first test were destroyed. Sassak then agreed to submit a urine sample, but McGannon never administered one to her. McGannon reported that Sassak refused to provide a sample. These station house events were all recorded by video cameras, and plaintiffs allege that the Park Ridge defendants have since

---

[1] Plaintiffs allege that McGannon selectively deactivated the microphone in order avoid recording certain unlawful orders and threats (see cplt. ¶ 17).

destroyed the tapes.

Gorman was charged with resisting arrest and obstructing a police officer, and Sassak was charged with two counts of speeding, driving under the influence, child endangerment, and resisting arrest. All but one speeding charge was dropped after an assistant state's attorney viewed the video recorded by the camera in McGannon's squad car. The prosecutor allegedly submitted a copy of the tape to the Park Ridge police chief. Plaintiffs' excessive force, assault, battery, false arrest, false imprisonment and malicious prosecution claims are primarily based on the arrests and post-arrest events. The remainder of the claims focus on events relating to McGannon's resignation from the Lake Zurich police department, and Park Ridge's subsequent decision to hire him.

Before McGannon began working for Park Ridge in May or June 2002, he was employed by Lake Zurich as a police officer. He held that position with Lake Zurich from 1993 until he resigned in 2001. Plaintiffs allege that prior to his resignation, Lake Zurich determined that McGannon had committed at least ten criminal offenses, including perjury and deceptive practices. Lake Zurich and McGannon allegedly entered into an agreement under which McGannon would resign, and in exchange, Lake Zurich would not disclose his criminal conduct to future employers, remove documents relating to that conduct from his personnel file, and provide positive job references to prospective employers. After McGannon resigned, Lake Zurich kept true to its end of the bargain and depicted McGannon in "glowing" terms to Park Ridge, which subsequently hired McGannon as a police officer.

Plaintiffs' complaint includes 20 counts, and the Lake Zurich defendants move to dismiss the eight counts directed at them. In Count V, plaintiffs allege that Lake Zurich had various policies, practices and customs that included a failure to train and control police officers, as well as hiding information relating to its officers' unlawful conduct. Count XIII

is a *respondeat superior* claim. In Count XIV, plaintiffs demand judgment from Lake Zurich for any damages awarded against individual defendants under 745 ILCS § 10/9-102. In Counts XV and XVI plaintiffs claim that the Lake Zurich defendants fraudulently and negligently misrepresented McGannon's credentials. Counts XVII and XVIII allege conspiracies under 42 U.S.C. §§ 1985(3) and 1983, between the Lake Zurich defendants and McGannon. Count XIX is a state law conspiracy claim, based on the agreement between the Lake Zurich defendants and McGannon. Park Ridge and McGannon also seek to dismiss Counts XVII, XVIII and XIX. In addition, Park Ridge seeks to dismiss Count XII, in which plaintiffs demand judgment under section 9-102. Plaintiffs have since voluntarily dismissed count XVII, the section 1985(3) claim.[2]

## DISCUSSION

Under Rule 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899, 901 (7th Cir. 2004). Dismissal is proper when it appears beyond a doubt that there exist no facts to support the allegations. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The court accepts all well-pleaded allegations and draws all reasonable inferences in plaintiffs' favor. Treadway v. Gateway Chevrolet Oldsmobile, Inc., 362 F.3d 971, 981 (7th Cir. 2004).

Count V–Section 1983 against Lake Zurich

In Count V, plaintiffs seek to establish Lake Zurich's liability under section 1983. Plaintiffs cannot rely on a *respondeat superior* theory, but must instead show that there was a Lake Zurich custom or policy that caused their injuries. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 689 (1978); Canton v. Harris, 489 U.S. 378, 389 (1989). A municipality or local government entity may violate section 1983 under three sets of

---

[2] *See* plf. resp. at 9 n.1.

circumstances: "(1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with 'final decision policymaking authority.'" McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995); Latuszkin v. City of Chicago, 250 F.3d 502, 504 (7th Cir. 2001).

Plaintiffs' Monell claim rests on two related policies, practices and customs. They first allege that Lake Zurich failed to train, supervise and monitor police officers who committed a number of wrongs, including violating department rules, making false arrests, using excessive force, physically and verbally abusing civilians, and that they also encouraged false detentions and false arrests (cplt. ¶ 92). Plaintiffs also allege that Lake Zurich hid information about the officers' "known unlawful and unconstitutional conduct," and provided positive references to prospective employers instead of dismissing the officers. Plaintiffs further allege that officials with final policymaking authority, including Urry, authorized the unlawful police conduct. The claims are thus based on the second and third grounds for municipal liability.

Lake Zurich argues that plaintiffs cannot state a claim based on a failure-to-train theory because on the night McGannon arrested plaintiffs he was a Park Ridge, not a Lake Zurich, police officer. Thus, Lake Zurich continues, it had no obligation or ability to train, control or discipline McGannon, and it cannot be held responsible for actions taken by former officers who are in the employ of other police departments. Lake Zurich also contends that McGannon was a private actor, not an employee, and it accordingly had no obligation to protect plaintiffs from him. With respect to plaintiffs' second policy, Lake Zurich argues that merely providing job references to a prospective employer is an insufficient basis for municipal liability. Lake Zurich also faults plaintiffs' theory because it fails to show that the

job references caused plaintiffs' injuries, which indicates that its role in McGannon's hiring is too far removed from his arrest of plaintiffs, which fails to satisfy necessary causation requirements.

Plaintiffs defend their position by arguing that municipal liability hinges on Lake Zurich's policies and customs, not on McGannon's employment status. Plaintiffs also reiterate the thrust of their complaint and identify a number of alleged policies through which Lake Zurich failed to train its police officers, condoned police misconduct, including criminal violations, and hid reports of that misconduct. According to plaintiffs, Lake Zurich knew or should have known that future constitutional violations would occur as a consequence of removing all references of criminal conduct and disciplinary action from McGannon's personnel file and misrepresenting his employment record to prospective employers.

In <u>Gibson v. City of Chicago</u>, 910 F.2d 1510, 1519 (7th Cir. 1990), the Seventh Circuit emphasized that "the City policy itself must cause the constitutional deprivation." In <u>Gibson</u>, the defendant placed an officer on medical leave and declared him unfit for duty. *Id.* at 1512. The defendant collected the officer's police badge and identification, but did not attempt to recover his service revolver. *Id.* Approximately three months later, the officer used that service revolver to shoot and kill his neighbor. *Id.* at 1513. To establish municipal liability, the plaintiff argued that the defendant lacked adequate procedures for recovering firearms and ammunition from officers who had been placed on medical leave, and that these inadequate procedures amounted to deliberate indifference to citizens' safety. *Id.* The court concluded that the suspended officer did not act under color of state law, yet, because the municipal liability analysis focuses on the alleged municipal policies, the defendant was not entitled to summary judgment. *Id.* at 1519-20.

<u>Gibson</u> does not stand for the proposition that a municipality cannot be held liable for

actions taken by a former officer or employee. That conclusion is contrary to the focus on the alleged policies and customs, rather than the specific conduct that ultimately harmed another. What Gibson does require is that the municipality's custom or policy be the moving force behind the harm-causing conduct. If the officer in Gibson had actually been fired, instead of suspended, prior to killing his neighbor, we doubt that the court would have arrived at the opposite outcome (provided that the plaintiff alleged an inadequate policy of recovering weapons from terminated officers, as opposed to suspended officers placed on medical leave). Similarly, even if the officer was employed elsewhere when he used the former employer's service revolver to shoot and kill another, municipal liability could rest on the former employer's inadequate firearm collection policy.

It is improper to emphasize McGannon's employment status at the expense of Lake Zurich's alleged policies. Lake Zurich cannot avoid liability by simply casting McGannon as a "purely private citizen."[3] Lake Zurich's emphasis on the employer-employee relationship hews too closely to the *respondeat superior* doctrine squarely rejected in Monell. Thus, even though no Lake Zurich police officer came into contact with plaintiffs, Lake Zurich could still face municipal liability.[4] However, under the facts alleged, plaintiffs fail to state a claim based on the alleged policies, customs and practices of failing to properly train, discipline, and control officers engaged in illegal conduct.

Even though the municipal liability analysis focuses on the alleged policies and customs, there must be a "direct causal link between a municipal policy or custom and the

---

[3] Lake Zurich bases several arguments on this characterization. For example, it contends that it had no obligation to protect plaintiffs and McGannon, who were all private citizens. *See* Lake Zurich repl. at 4-5 (citing DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189 (1989), and Stevens v. Umsted, 131 F.3d 697, 701 (7th Cir. 1997)). These arguments fail because it is Lake Zurich's alleged policies and not McGannon's employment status that forms the basis of municipal liability.

[4] This observation reflects the principle that "the municipality itself is the state actor and its action in maintaining the alleged policy at issues supplies the 'color of law' requirement under § 1983." Gibson, 910 F.2d at 1519.

alleged constitutional deprivation." Canton, 489 U.S. at 385; Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997); Arlotta v. Bradley Ctr., 349 F.3d 517, 522 (7th Cir. 2003). With respect to the failure-to-train allegations, any link between Lake Zurich's failure to train and McGannon's arrest of plaintiffs was severed by McGannon's subsequent employment by Park Ridge. A failure-to-train or -discipline allegation often supports a finding of municipal liability because a policy of condoning abuse may embolden a municipal employee and facilitate further abusive acts. *See* Craig v. Lima City Schools Bd. of Educ., 384 F. Supp. 2d 1136, 1148 (N.D. Ohio 2005) (observing that school's alleged custom of allowing teachers accused of abusing students to resign, providing them neutral or favorable job references, not reporting incidents of abuse to authorities, and failing to adopt correct policies, could have emboldened and facilitated a teacher who had a sexual relationship with a student). Lake Zurich and Park Ridge are distinct municipalities and it cannot be said that the policies and customs of the former motivated plaintiff when he was employed by the latter. Lake Zurich's failure to discipline and control its police officers could provide no incentives for McGannon to engage in illegal activity as a Park Ridge police officer. Further, Lake Zurich could not ratify or condone McGannon's arrest of plaintiffs.

Gibson further illustrates why Lake Zurich cannot be liable based on its alleged failure to train, control and discipline its officers. In Gibson, had the defendant instituted an adequate weapon collection policy, and efficaciously applied it to the officer placed on medical leave, then the officer could not have used his service revolver to shoot his neighbor. There was a direct link between the failed policy and the ultimate harm. In contrast, even if Lake Zurich adequately trained or disciplined its police officers, that training would not prevent an officer from committing acts of abuse when subsequently employed by another jurisdiction. The causal link is absent in the second example.

Unlike the first alleged policy, plaintiffs' second policy, which involved Lake Zurich's concealing of criminal conduct and providing false job references to prospective employers, states a claim upon which relief can be granted. According to plaintiffs, had Lake Zurich fired McGannon, which it allegedly had ample cause to do, instead of hiding his criminal and disciplinary record, he would not have been in a position to violate their rights as a Park Ridge police officer. As alleged, Lake Zurich's manipulation of McGannon's employment record and false statements to Park Ridge and other prospective employers is more severe than official inaction in the face of a known danger.[5]

Plaintiffs also allege that it was reasonably foreseeable to Lake Zurich that not disclosing McGannon's criminal conduct and dangerous propensities would facilitate his hire and would also enable him to harm others as a police officer. Plaintiffs have adequately alleged that the Lake Zurich defendants' policy, custom or practice of concealing its officers' criminal conduct, misrepresenting their employment records and providing knowingly false job references, caused their injuries. Lake Zurich cites Doe v. Wright, 82 F.3d 265 (8th Cir. 1996), in which a plaintiff who was sexually assaulted by a police officer brought an action against the officer's former employer. The former employer failed to disclose to the future employer the officer's prior acts of sexual abuse. The court held that the officer was not acting as an agent of his former employer because he abused the plaintiff seventeen months after he left the former employer. Id. at 268. Wright is distinguishable because plaintiffs

---

[5] As alleged, Lake Zurich's conduct is also more severe than that presented in its primary case, Roach v. City of Iowa Park, 2003 U.S. Dist. LEXIS 4357, 2003 WL 21210445 (N.D. Tex. 2003). In that case the police department agreed not to release any information aside from an officer's dates of employment in exchange for the officer's resignation and agreement not to seek any claims against the City. Plaintiffs here allege that Lake Zurich also provided positive recommendations. Similarly, in Shrum ex rel. Kelly v. Kluck, 85 F. Supp. 2d 950, 958 (D. Neb. 2000), aff'd 249 F.3d 773 (8th Cir. 2001), the former employer only provided "a neutral letter of recommendation" for a teacher who abused a student when employed by another school. The subsequent employer never actually spoke with the former employer. Moreover, in Shrum, 249 F.3d at 780, the former employer was only aware of rumors and investigations into a former employee's misconduct, but plaintiffs claim that Lake Zurich had actual knowledge of McGannon's criminal conduct.

base their municipal liability claim on Monell, and thus Lake Zurich is the state actor and its maintaining of the alleged custom and policy of providing false job references supplies the section 1983 color of law requirement. *See* Gibson, 910 F.3d at 1519.

Lake Zurich also claims that any role it served was too remote in the hiring process. This claim presents factual questions that we cannot resolve on a motion to dismiss. Even though Lake Zurich's misrepresentations were made between 44 and 18 months prior to McGannon's arrests of plaintiffs, it can be fairly said that Lake Zurich's failure to correct their job references and disclose McGannon's criminal past were also integral facets of their policy or custom of non-disclosure and concealment. The passing of time between the effectuating of the municipal policy and the constitutional deprivation may be so great that it severs the causal link between policy and harm, but the impact of that time presents questions of degree and fact that cannot be answered on a motion to dismiss. *Compare* Doe v. Methacton Sch. Dist., 880 F. Supp. 380, 383-85 (E.D. Pa. 1995) *with* Doe v. Methacton Sch. Dist., 914 F. Supp. 101 (E.D. Pa. 1996). In sum, plaintiffs do state a Monell claim against Lake Zurich, but only to the extent that they allege Lake Zurich hid information about officers' known misconduct and provided positive references on behalf of those officers.

### Counts XV and XVI–Fraudulent and Negligent Misrepresentation against the Lake Zurich defendants

The alleged misrepresentations made by the Lake Zurich defendants are also the bases of plaintiffs' two misrepresentation claims. In those claims plaintiffs allege that the Lake Zurich defendants knowingly made false statements of fact to McGannon's prospective employers, intending to induce their reliance, and that Park Ridge actually relied on those false statements when it hired McGannon. Plaintiffs claim that in making those statements the Lake Zurich defendants disregarded the risk that further acts of physical violence and additional civil rights violations would result if another police department hired McGannon.

Plaintiffs also assert that they, along with other citizens of Illinois, rely on the Lake Zurich defendants to honestly assess their officers and not allow dangerous officers to remain on the job.

The Lake Zurich defendants argue that plaintiffs fail to meet the elements of the misrepresentation claims because they cannot show, and do not allege, that defendants made any statements to plaintiffs with the intent to induce their reliance, and that they actually relied on any statements. Defendants also contend that any third party reliance claim is foreclosed because they did not know that plaintiffs would rely on any statements made to McGannon's prospective employers. Defendants further argue that the Illinois Tort Immunity Act warrants dismissal of the misrepresentation claims.

The elements of fraudulent misrepresentation are (1) a false statement of material fact, not a mere promise or opinion; (2) the maker of the statement must know the representation is false; (3) the maker of the statement must intend to induce the receiver to act; (4) the receiver must justifiably rely on the truth of the statement; and (5) damages resulting from the receiver's reliance. Bauer v. Giannis, 834 N.E.2d 952, 957, 296 Ill. Dec. 147 (Ill. App. 2d Dist. 2005); Weeks v. Samsung Heavy Indus. Co., 126 F.3d 926, 940 (7th Cir. 1997). The tort of negligent misrepresentation involves the same elements, except for the defendant's mental state. To allege a negligent misrepresentation claim, a plaintiff must show that the defendant was negligent in ascertaining the truth of the statement, not that he knew the statement was false. Roe v. Jewish Children's Bureau, 339 Ill. App. 3d 119, 790 N.E.2d 882, 893, 274 Ill. Dec. 109 (Ill. App. 1st Dist. 2003); Prime Leasing, Inc. v. Kendig, 332 Ill. App. 3d 300, 773 N.E.2d 84, 94, 265 Ill. Dec. 722 (Ill. App. 1st Dist. 2002).

Under Illinois law an actionable misrepresentation claim does not require that the misrepresentation be made directly to the plaintiff. Hartmann v. Prudential Ins. Co. of Am.,

9 F.3d 1207, 1212 (7th Cir. 1993); *see also* Quinn v. McGraw-Hill Cos., 168 F.3d 331, 335 (7th Cir. 1999) (quoting Rosenstein v. Standard & Poor's Corp., 264 Ill. App. 3d 818, 636 N.E.2d 665, 667, 201 Ill. Dec. 233 (Ill. App. 1st Dist. 1993) ("tort of negligent misrepresentation extends to third parties who lack privity with the defendant where the 'defendant knew the information would be used and relied upon' and 'the potential liability was restricted to a comparatively small group.'"). However, this exception to the privity requirement "has not gone so far as to permit the recovery of damages by someone who never learned of the misrepresentation at all." Hartmann, 9 F.3d at 1212 (citing People ex rel. Peters v. Murphy-Knight, 248 Ill. App. 3d 382, 618 N.E.2d 459, 466, 187 Ill. Dec. 868 (Ill. App. 1st Dist. 1993)). Reliance depends on learning of the misrepresentation – one cannot rely on something one does not know.

Here plaintiffs do not allege that they learned of the Lake Zurich defendants' misrepresentations to Park Ridge prior to their arrest. Plaintiffs presumably attempt to compensate for this deficiency with their assertion that they, like the citizens of Illinois, generally rely on the Lake Zurich defendants to provide honest assessments of their officers and to keep dangerous officers off the streets. The first basis is too broad, and it does not show that plaintiffs changed their behavior in accordance with the false statements. The second basis presents a general duty as opposed to representations made by the Lake Zurich defendants.

Even though plaintiffs allege that the Lake Zurich defendants misrepresented McGannon's credentials in order to deceive Park Ridge, they still contend that their claims are viable because their reliance was foreseeable. The cases plaintiffs cite do not support their position. The discussion of foreseeability in Scott & Fetzer Co. v. Montgomery Ward & Co., 112 Ill. 2d 378, 493 N.E.2d 1022, 98 Ill. Dec. 1 (Ill. 1986), did not occur solely in the context

of a fraudulent misrepresentation claim. In <u>Scott</u>, the plaintiffs were tenants in a warehouse in which the defendant installed a fire alarm system for an adjacent tenant, Montgomery Ward. A small fire began in the building, but grew into a large blaze after the fire alarm system failed to transmit alarm signals to the fire department. The defendant argued it had no duty to protect against the tenant's losses because its agreement to install the fire alarm system was with Montgomery Ward. That argument was rejected because the losses to the adjacent tenants in the event of a fire were foreseeable. *Id.* at 1026. The plaintiff's claims were based on the defendant's negligence, and the governing legal standards explicitly enabled third parties to recover for a defendant's negligence. *Id.* at 1027 (quoting <u>Pippin v. Chicago Housing Authority</u>, 78 Ill.2d 204 (1979)). The court only mentioned the fraudulent misrepresentation claim when it listed the counts in Montgomery Ward's third party complaint against the alarm installer. That claim was not subject to any analysis.

In <u>Rozny v. Marnul</u>, 43 Ill.2d 54, 250 N.E.2d 656 (Ill. 1969), the plaintiffs purchased a house and lot in a plat that was inaccurately described in a survey that the defendant surveyor prepared. Relying on the inaccurate survey, the plaintiffs made structural improvements to their land that extended over their lot's boundaries. The court held that the plaintiffs could recover against the defendant, even though the defendant did not draft the survey for the plaintiffs. The plaintiffs' reliance on the survey, which the defendant guaranteed as accurate, was foreseeable. The court was mindful of an "unlimited liability factor," but found that the class of persons who would foreseeably rely on the plat was limited to "those who deal with the surveyed property as purchasers or lenders," and that "[i]njury will ordinarily occur only once and to the one person then owning the lot." *Id.* at 663. In contrast, plaintiffs' theory involves a much larger universe of possible claimants, with a pronounced potential for multiple injuries and with liability not restricted to a small group.

*See* Rosenstein, 636 N.E.2d at 668. Moreover, while the plaintiffs in Rozny reviewed the incorrect survey prior to purchasing the house (*id.* at 658), plaintiffs here never reviewed the representations that the Lake Zurich defendants made to Park Ridge. Further, the defendant surveyor actually knew, and indeed intended, that others would rely on the plat. But according to plaintiffs the Lake Zurich defendants only intended for prospective employers to rely on their misrepresentations.

In sum, plaintiffs' cases are readily distinguishable and do not support their argument, which essentially replaces the reliance and intent to deceive elements of misrepresentation claims with a general foreseeability standard.[6] Foreseeability is not an element of either misrepresentation claim, but is instead a narrow exception to the requirement of privity, and is only applicable when liability is limited to a small group. Because plaintiffs cannot meet the reliance or intent to induce elements of their misrepresentation claims,[7] we do not reach the Lake Zurich defendants' tort immunity argument. Counts XV and XVI are dismissed.

## Count XVIII–Section 1983 conspiracy between the Lake Zurich defendants and McGannon

Plaintiffs allege that the Lake Zurich defendants conspired with McGannon and agreed to hide his criminal conduct in exchange for his resignation from the Lake Zurich police department (cplt. ¶ 152). In addition to covering up McGannon's criminal history, plaintiffs further allege that defendants conspired to deprive persons of their constitutional rights (*id.* ¶ 153). They also assert that it was reasonably foreseeable to defendants that McGannon

---

[6] Plaintiffs rely heavily on Sager v. City of Woodland Park, 543 F. Supp. 282 (D. Col. 1982). The discussion of foreseeability in Sager is not relevant because the plaintiffs sought liability on a negligence, not a misrepresentation theory.

[7] The reliance element is given the same treatment for negligent and fraudulent misrepresentation cases. *See* Quinn v. McGraw-Hill Cos., 168 F.3d 331, 335 (7th Cir. 1999); Regensburger v. China Adoption Consultants, 138 F.3d 1201, 1208 (7th Cir. 1998).

would continue violating rights of others as a result of their conspiracy (*id.* ¶ 158), and that McGannon violated their rights after Park Ridge hired him (*id.* ¶ 159).

The Lake Zurich defendants and McGannon argue that Count XVIII must be dismissed because plaintiffs fail to allege what constitutional rights defendants conspired to violate. Plaintiffs, according to defendants, only allege that the defendants conspired to hide McGannon's past misconduct in exchange for his resignation. Defendants argue that this coverup is not actionable because plaintiffs had ready access to the courts. Defendants also contend that plaintiffs' claim fails because it depends on an intra-corporate conspiracy.

Section 1983 does not provide a cause of action for conspiracy *per se*. Lesser v. Braniff Airways, Inc., 518 F.2d 538, 540 (7th Cir. 1975). For plaintiffs to establish section 1983 liability through a conspiracy theory, they must show that defendants reached an agreement to deprive them of their constitutional rights. Vukadinovich v. Zentz, 995 F.2d 750, 756 (7th Cir. 1993). *See also* Lesser, 518 F.2d at 540 ("the gist of the [section 1983] cause of action is the deprivation and not the conspiracy"); Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998). Plaintiffs allege that the Lake Zurich defendants were aware of McGannon's criminal history and other misconduct (cplt. ¶¶ 152, 156), and conspired with him not only to hide his past wrongdoings, but also to "deprive persons of their Fourth and Fourteenth Amendment Rights" (*id.* ¶ 153). Plaintiffs also allege that these deprivations were foreseeable (*id.* ¶ 158), and their rights were actually deprived (*id.* ¶¶ 159-60). The agreement to cover up McGannon's past is only one aspect of the conspiracy.[8] Plaintiffs have clearly identified an agreement (Tierney v. Vahle, 304 F.3d 734, 740, 742 (7th Cir. 2002)) and the constitutional rights that defendants

---

[8] Defendants' depiction of the claim as a "cover-up conspiracy" is an inaccurate characterization, and their argument based on that description goes nowhere. Plaintiffs allege that past criminal acts – not any act committed against them – were concealed in order to whitewash McGannon's personnel file and facilitate his hiring by another department. Thus, the fact that plaintiffs' right of access to the courts was not encumbered by defendants' conspiracy is of no moment.

allegedly agreed to violate, which is all they must do at this stage. Their conspiracy claim is not subject to heightened pleadings rules (Walker v. Thompson, 288 F.3d 1005, 1007 (7th Cir. 2002)), and the merits of that claim are not presently at issue.

Defendants next argue that plaintiffs fail to state a claim because the Lake Zurich defendants and McGannon were members of the same municipal corporation, and under the intra-corporate conspiracy doctrine "a conspiracy cannot exist solely between members of the same entity." Payton v. Rush-Presbyterian St. Luke's Med. Ctr., 184 F.3d 623, 632 (7th Cir. 1999). There is conflict whether the doctrine applies to section 1983 actions involving police misconduct. *See* McDorman v. Smith, 2005 U.S. Dist. LEXIS 15964, *16-17, 2005 WL 1869683 (N.D. Ill. 2005) (citing cases). Even if we assume that the doctrine is applicable, it would not bar plaintiffs' claim.

The intra-corporate doctrine is not a bar because plaintiffs allege that defendants conspired to deprive others of their civil rights. For the doctrine to apply, the members of the purported conspiracy must work in the corporation's interest. Payton, 184 F.3d at 633. The deprivation of civil rights could not be a goal of Lake Zurich. Further, concealing an employee's criminal misconduct in order to facilitate his employment with another police department is not a routine police department procedure. *See* McDorman, 2005 U.S. Dist. LEXIS 15964, *18. The deprivation of civil rights is unlawful and the intra-corporate doctrine only applies when members of a corporation are jointly pursuing the corporation's "lawful business." Wright v. Illinois Dept. of Children & Family Servs., 40 F.3d 1492, 1508 (7th Cir. 1994) (quoting Dombrowski v. Dowling, 459 F.2d 190, 196 (7th Cir. 1992). Moreover, plaintiffs have alleged that defendants acted in furtherance of the conspiracy after McGannon tendered his resignation, at which time defendants were not members of the same collective entity. Defendants' motion to dismiss Count XVIII is denied.

## Count XIX–State law conspiracy against the Lake Zurich defendants and McGannon

In Count XIX plaintiffs allege that the Lake Zurich defendants and McGannon agreed to hide McGannon's criminal history in exchange for his resignation (cplt. ¶ 163). Defendants misrepresented McGannon's performance record in furtherance of the conspiracy (*id.* ¶ 165). Defendants argue that this count must be dismissed because it does not include an independent tort. Under Illinois law, conspiracy is not an independent tort, and if a plaintiff "fails to state an independent cause of action underlying his conspiracy allegations, the claim for conspiracy also fails." Thomas v. Fuerst, 345 Ill. App. 3d 929, 803 N.E.2d 619, 625-26, 281 Ill. Dec. 215 (Ill. App. 1st Dist. 2004).

The parties agree that the viability of the state law conspiracy claim depends on the existence of independent state law claims, which in this case are the fraudulent and negligent misrepresentation claims. Allegations of misrepresentation are central to the state law conspiracy claim. Plaintiffs allege that defendants "purposely lied to agencies reviewing McGannon's performance for possible hire as a police officer," in furtherance of the conspiracy. *See* cplt. ¶ 165. As discussed above, plaintiffs' misrepresentation claims fail because they do not plead the elements of reliance and intent to deceive. Their state law conspiracy claim accordingly fails, and is dismissed.

## Count XIII–*Respondeat Superior* claim against Lake Zurich

In Count XIII plaintiffs claim that Urry acted within the scope of his employment as Lake Zurich's agent with final policymaking authority, and that his acts and omissions related to state law violations are chargeable to Lake Zurich (cplt. ¶ 121).[9] Lake Zurich argues that the count must be dismissed because substantive state law fails. In response,

---

[9] A typographical error in the complaint charges Urry's acts "to his employer the Defendant City of Park Ridge."

plaintiffs only claim that their substantive state law claims are adequately pled. Because the misrepresentation claims are dismissed, the *respondeat superior* claim meets the same fate.[10]

## Counts XII and XIV–Judgment demands against Park Ridge and Lake Zurich

In Counts XII and XIV plaintiff invokes 745 ILCS § 10/9-102 and demands judgment against Park Ridge and Lake Zurich, respectively, for any amounts awarded against their employees. Park Ridge and Lake Zurich argue that plaintiffs' demands are untimely and are appropriately made only after judgment is entered against the employee. To support their position, defendants cite Spiegel v. City of Chicago, 920 F. Supp. 891, 901 (N.D. Ill. 1996). Lake Zurich also argues that Count XIV must be dismissed because plaintiff's state law claims against it are inadequate. Plaintiffs riposte that they may demand judgment against the municipalities before any judgment has been entered against an employee, and cite Wilson v. City of Chicago, 120 F.3d 681 (7th Cir. 1997).

Section 9-102 directs a local municipality to indemnify its employees and pay any compensatory damages "for which it or an employee while acting within the scope of his employment is liable." Following Rosentreter v. Munding, 736 F. Supp. 165, 171-72 (N.D. Ill. 1990), Spiegel concluded that a section 9-102 claim could not be brought prior to a judgment against a municipal employee. In Wilson the Seventh Circuit observed that a plaintiff could seek a judgment against the municipality that would take effect when and if judgment against its employees was entered. Wilson, 120 F.3d at 685. Wilson further noted that there was no benefit in requiring a plaintiff to initiate a separate proceeding against the municipality. *Id.* After Wilson, courts have permitted section 9-102 claims to be filed prior to finding any municipal employee liable. *See* Savin v. Robinson, 2001 U.S. Dist. LEXIS 16378, *6; 2001 WL

---

[10] Plaintiffs assert that Lake Zurich would be liable for state law claims against other municipal employees, but they do not allege any theory of relief in addition to the inadequate misrepresentation claims.

1191192 (N.D. Ill. 2001); Medina v. City of Chicago, 100 F. Supp. 2d 893, 895 n.1 (N.D. Ill. 2000) ("Indeed, the [Wilson] court also held that the plaintiff need not wait until he obtains a judgment against the individual officer to bring his claim against the municipality under section 9-102."); Brown v. King, 328 Ill. App. 3d 717, 767 N.E.2d 357, 362-63, 262 Ill. Dec. 897 (Ill. App. 1st Dist. 2001) (noting that Wilson rejected Spiegel and concluding that prejudgment reliance on section 9-102 is not premature). Wilson controls this issue. Count XII against Park Ridge is not untimely and the motion to dismiss it is denied. However, Lake Zurich's motion to dismiss Count XIII is granted because that count rests on the fraudulent and negligent misrepresentation claims against Urry, which as discussed above, do not survive the Lake Zurich defendants' motion to dismiss.

## CONCLUSION

For the foregoing reasons, Count V states a claim as it relates to the manipulation of McGannon's employment record, and we deny the motion to dismiss that count; the motion to dismiss Count XII is denied; Counts XIII, XIV, XV and XVI are dismissed against Lake Zurich; plaintiffs have voluntarily dismissed Count XVII; the motions to dismiss Count XVIII are denied; and Count XIX is dismissed.

_JAMES B. MORAN_
Senior Judge, U. S. District Court

March 2, 2006.